YU, J. (concurring)
¶ 49 I concur with our affirmance of the trial court's evidentiary rulings and write only to *505 emphasize the importance of carefully evaluating proposed expert testimony to determine its relevance and admissibility in each individual case. The trial court in this case correctly found that Dr. Allan Tencer's proposed testimony would be "confusing" and "misleading" because it invited the jury to draw unjustified conclusions based on unreasonable inferences with no supporting evidence. 1 Verbatim Report of Proceedings (June 5, 2015) at 39. The court therefore properly excluded this testimony as irrelevant.
¶ 50 The only disputed issues in this case were the extent of Michael Gilmore's injuries and the amount of his damages. While Dr. Tencer admitted that the dispute is "the severity of injury," he described his proposed testimony as relating only to "the severity of the impact," that is, "the forces of the collision and the forces experienced by the Plaintiff." Clerk's Papers at 365. Therefore, according to Dr. Tencer, the proposed testimony was "not medical," but was intended to "help the jury assess the validity of the opinions of the Plaintiff's and Defendant's medical doctors." Id. at 365-66.
¶ 51 Dr. Tencer provided no factual foundation and pointed to no reliable evidence regarding the forces actually experienced by Mr. Gilmore in this particular accident. Instead, he asserted that he "compute[s] the speed change" of a vehicle following a crash by applying "engineering principles" based on the vehicle's weight (according to the automobile industry), the speed of the impact (based on the amount of damage to the vehicle), and the "elasticity of the impact." Id. at 366. He then uses that calculation to determine the force experienced by the victim based on the design and placement of restraints in the vehicle and the injured person's "age, weight, and height." Id.
¶ 52 In light of this explanation, the trial court properly did not credit Dr. Tencer's assertion that his proposed testimony "is not related to any averages." Id. at 365. To the contrary, it is clear that Dr. Tencer intended to import "average person" studies of vehicle crash tests to speculate *506 what the transfer of energy might have been in this case and, *224 assuming that initial speculation was accurate, whether the impact on Mr. Gilmore could really have caused the alleged injuries.
¶ 53 This testimony would not have been helpful to the jury in determining the actual level of injury sustained by this particular plaintiff in this particular accident. However, that is always the actual question at issue because all personal injury defendants must take all plaintiffs as they are, even if the plaintiff is not an average person. In other words, "[t]here is no 'one size fits all' approach to collisions or injury threshold levels." Johnston-Forbes v. Matsunaga, 181 Wash.2d 346, 358, 333 P.3d 388 (2014) (Yu, J., concurring).
¶ 54 An individualized inquiry into the severity of injuries caused by a particular crash is properly within the province of the jury. The trial court in this case properly determined that the jury would not benefit from Dr. Tencer's speculative conclusions and therefore properly excluded his proposed testimony. To do otherwise might well have been an abuse of discretion.
¶ 55 I respectfully concur.